CASE NO. 24-7016

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

MARCI D. WALKINGSTICK,

Plaintiff/Appellant,

v.

STATE OF OKLAHOMA, *ex rel.,* THE REGIONAL UNIVERSITY
SYSTEM OF THE OKLAHOMA BOARD OF REGENTS d/b/a
NORTHEASTERN STATE UNIVERSITY, and RICHARD REIF,

Defendants/Appellees.

DEFENDANTS/APPELLEES' RESPONSE BRIEF

Appeal of U.S. District Court for the Eastern District of Oklahoma
Case No. 19-cv-391-GLJ
HONORABLE GERALD L. JACKSON

ORAL ARGUMENT REQUESTED

DIXIE L. COFFEY, OBA#11876
LEXIE P. NORWOOD, OBA#31414
Assistant Attorneys General
Oklahoma Attorney General's Office
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921   Facsimile: (405) 521-4518
dixie.coffey@oag.ok.gov * lexie.norwood@oag.ok.gov
*Attorneys for Defendants/Appellees*
June 10, 2024

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................i

TABLE OF AUTHORITIES....................................................iv

GLOSSARY OF ACRONYMS.................................................vii

APPELLEES' RESPONSE BRIEF........................................1

PRIOR OR RELATED APPEALS........................................1

JURISDICTIONAL STATEMENT.......................................2

STATEMENT ON ORAL ARGUMENT.................................3

STATEMENT OF THE ISSUES..........................................3

STATEMENT OF THE CASE...............................................2

SUMMARY OF THE ARGUMENT.......................................5

STANDARD OF REVIEW.....................................................6

ARGUMENT AND AUTHORITY...........................................7

PROPOSITION I:

    THE DISTRICT COURT APPLIED THE PROPER PRIMA
FACIE TEST TO MS. WALKINGSTICK'S CLAIMS.................7

PROPOSITION II:

    THE DISTRICT COURT DID NOT VIOLATE THE PARTY
PRESENTATION RULE...............................................................12

**PROPOSITION III:**

    **MS. WALKINGSTICK'S EVIDENCE WAS NOT SUFFICIENT TO SATISFY THE THREE-PART TEST** ................................. 14

**PROPOSITION IV:**

    **THE DISTRICT COURT PROPERLY FOUND MS. WALKINGSTICK HAD NOT ESTABLISHED A PRIMA FACIE CASE OF RETALIATION** ............................................ 16

**PROPOSITION V:**

    **THE DISTRICT COURT PROPERLY ASSESSED MS. WLAKINGSTICK'S PRETEXT EVIDENCE** ............................ 19

**PROPOSITION VI:**

    **THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT IN FAVOR OF DR. REIF ON MS. WALKINGSTICK'S FMLA RETALIATION CLAIM** .............. 23

**PROPOSITION VII:**

    **THE DISTRICT COURT PROPERLY HELD DR. REIF IS ENTITLED TO QUALIFIED IMMUNITY** ............................... 27

**CONCLUSION** ........................................................................ 29

**CERTIFICATE OF COMPLIANCE** ..................................................... 31

**CERTIFICATE OF SUBMISSION** ..................................................... 31

**CERTIFICATE OF SERVICE** ......................................................... 32

# TABLE OF AUTHORITIES

## CASES

*Adamson v. Multi Cmty Diversified Servs., Inc.,*
514 F.3d 1136 (10th Cir. 2008) ....................................... 8, 9, 10

*Anderson v. Acad. Sch. Dist. 20,*
122 F.App'x 912 (10th Cir. 2004) .......................................... 18

*Anderson v. Coors Brewing Co.,*
181 F.3d 1171 (10th Cir. 1999) ....................................... 17, 18

*Anderson v. Creighton,*
483 U.S. 635 (1987) ............................................................ 28

*Ashcroft v. al-Kidd,*
131 S. Ct. 2074 (2011) ................................................... 27, 28

*Barlow v. C.R. England, Inc.,*
703 F.3d 497 (10th Cir. 2012) .............................................. 10

*Bekkem v. Wilkie,*
915 F.3d 1258 (10th Cir. 2019) ............................................ 10

*Bennett v. Windstream Commc'ns, Inc.,*
792 F.3d 1261 (10th Cir. 2015) ................................. 10, 11, 14

*Callahan v. Millard County,*
494 F.3d 891 (10th Cir. 1997) .............................................. 28

*Comcast Corp. v. Nat'l Ass'n of Afr. Am. Owned Media,*
140 S. Ct. 1009 (2020) ......................................................... 9

*Cordova v. New Mexico,*
283 F.Supp.3d 1028 (D. N.M. 2017)..................................... 25

*Cox v. Glanz,*
800 F.3d 1231 (10th Cir. 2015) ............................................. 27

*Daniels v. United Parcel Service,*
701 F.3d 620 (10th Cir. 2012) ............................................. 10

*Doebele v. Sprint/United Mgmt. Co.,*
342 F.3d 1117 (10th Cir. 2003) ............................................. 23

*Fields v. City of Tulsa,*
753 F.3d 1000 (10th Cir. 2014) ............................................. 7

*First Unitarian Church of Salt Lake City v. Salt Lake Corp.,*
308 F.3d 1114 (10th Cir. 2002) ........................................... 6, 7

*Hinds v. Sprint/United Mgmt. Co.,*
523 F.3d 1187 (10th Cir. 2008) ............................................. 18

*Hornaday Mfg. Co. v. Doubletap, Inc.,*
746 F.3d 995 (10th Cir. 2014) ............................................. 7

*Hysten v. Burlington Northern & Santa Fe Ry. Co.,*
296 F.3d 1177 (10th Cir. 2002) ............................................. 15

*Int'l Bhd. of Teamsters v. U.S.,*
431 U.S. 324 (1977) ...................................................... 9, 11

*Kendrick v. Penske Transp. Servs., Inc.,*
220 F.3d 1220 (10th Cir. 2000) ........................................... 9, 11

*Khalik v. United Air Lines,*
671 F.3d 1188 (10th Cir. 2012) ............................................. 17

*Macon v. United Parcel Service, Inc.,*
743 F.3d 708 (10th Cir. 2014) ............................................. 26

*Malley v. Briggs,*
475 U.S. 335 (1986) ....................................................... 28

*McDonnell Douglas Corp. v. Green,*
4111 U.S. 792 (1973) ............................................................. 8, 9

*McGowan v. City of Eufaula,*
472 F.3d 736 (10th Cir. 2006) ................................................ 15

*Mitchell v. Forsyth,*
472 U.S. 511 (1985) ...................................................... 11, 14 28

*Orr v. City of Albuquerque,*
417 F.3d 1144 (10th Cir.2005) ............................................... 10

*Packard Motor Car Co. v. N.L.R.B.,*
67 S. Ct. 789 (1947) ......................................................... 25, 26

*Pearson v. Callahan,*
555 U.S. 223 (2009) ......................................................... 27, 29

*Perry v. Woodward,*
199 F.3d 1126 (10th Cir. 1999) ................................................. 8

*Plotke v. White,*
405 F.3d 1092 (10th Cir. 2005) ............................................... 15

*Richison v. Ernest Grp., Inc.,*
634 F.3d 1123 (10th Cir. 2011) ............................................... 13

*Roska ex rel., Roska v. Peterson,*
328 F.3d 1230 (10th Cir. 2003) ........................................... 28, 29

*Saavedra v. Lowe's Home Centers, Inc.,*
748 F.Supp.2d 1273 (D. N.M. 2010) .................................... 24, 25

*Salemi v. Colorado Pub. Employees' Ret. Ass'n,*
176 F.Supp.3d 1132 (D. Colo. 2016) *aff'd,* 747 F.App'x 675 (10th Cir.
2018) ....................................................................... 25

*Smith v. Castaways Family Diner,*
453 F.3d 971 (7th Cir. 2006) ............................................ 25, 26

*Sorbo v. United Parcel Serv.,*
432 F.3d 1169 (10th Cir. 2005) ............................................ 10

*Swackhammer v. Sprint/United Mgmt. Co.,*
493 F.3d 1160 (10th Cir. 2007) ............................................ 22

*Tabor v. Hilti, Inc.,*
703 F.3d 1206 (10th Cir. 2013) ............................................ 10

*Trujillo v. PacifiCorp,*
524 F.3d 1149 (10th Cir. 2008) ............................................ 18

*U.S. v. Sineneng-Smith,*
140 S. Ct. 1575 (2020) ............................................ 12, 13

*Zisumbo v. Convergys Corp.,*
2020 WL 3546794 (D. Utah 2020) ............................................ 24

## STATUTES

26 U.S.C. § 2611(4)(A) ............................................ 24

28 U.S.C. § 1291 ............................................ 2

28 U.S.C. § 1331 ............................................ 2

29 U.S.C. § 2617(a) ............................................ 2

42 U.S.C. § 2000e-5(f) ............................................ 2

42 U.S.C. § 2617(a) ............................................ 23

29 C.F.R. § 825.104(d) ............................................ 25

# RULES

Fed. R. Civ. P. 56(c) ....................................................................... 6

Fed. R. App. P. 34(a)(2)(c) ........................................................... 3

10th Cir. Rule 28.2(C)(3) .............................................................. 1

# GLOSSARY OF ACRONYMS

App. Vol. ......................................................... Appendix Volume

CIO.................................................... Chief Information Officer

FMLA.............................................. Family Medical Leave Act

HR................................................................... Human Resources

ITS ...........................................Enterprise Systems Information Services

NSU ........................................ Northeastern State University

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

| | |
|---|---|
| MARCI D. WALKINGSTICK, | |
| Plaintiff/Appellant, | |
| v. | |
| STATE OF OKLAHOMA, *ex rel.,* THE REGIONAL UNIVERSITY SYSTEM OF THE OKLAHOMA BOARD OF REGENTS d/b/a NORTHEASTERN STATE UNIVERSITY; RICHARD REIF, individually, | **Case No: 24-7016** |
| Defendants/Appellees. | |

## <u>RESPONSE BRIEF OF APPELLEES NSU AND DR. REIF</u>

Defendants/Appellees State of Oklahoma, *ex rel.*, The Regional University System of the Oklahoma Board of Regents d/b/a Northeastern State University ("NSU"), and Richard Reif (Dr. Reif) respectfully submit this Brief in Response to the Opening Brief of Plaintiff/Appellant Marci D. Walkingstick Dixon ("Ms. Walkingstick").

## PRIOR OR RELATED APPEALS

Appellees certify under Tenth Circuit Rule 28.2(C)(3) that there are no prior or related appeals.

# JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of Oklahoma appropriately exercised jurisdiction over this matter, as Ms. Walkingstick sought relief pursuant to 42 U.S.C. § 2000e-5(f), 29 U.S.C. § 2617(a)(2), and 28 U.S.C. § 1331. This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the District Court entered an Order Granting Partial Summary Judgment on March 29, 2023, in favor of Defendants Dr. Reif and NSU. App. Vol. 5 at 982-1024. On May 17, 2023, Ms. Walkingstick's Motion to Reconsider was denied. *Id.* at 1056-1069. The remaining claim of hostile work environment against NSU was tried by jury, and judgment entered on February 22, 2024, in favor of Defendant NSU. *Id.* at 1070. This entry of Judgment disposed of all remaining claims and the Order Granting Partial Summary Judgment became final and appealable on February 22, 2024, pursuant to 28 U.S.C. § 1291.

Ms. Walkingstick commences the instant appeal from the March 29, 2023 Order Granting Partial Summary Judgment. Ms. Walkingstick's Notice of Appeal was timely filed on March 5, 2024. App. Vol. 5 at 1071-1072.

## STATEMENT ON ORAL ARGUMENT

Oral argument is requested to aid the decisional process in this appeal regarding the proper legal analysis of Plaintiff's prima facie case and lack of pretext, as well as Dr. Reif's entitlement to qualified immunity. *See* Fed. R. App. P. 34(a)(2)(c).

## STATEMENT OF THE ISSUES

I. **Did the District Court apply the proper standard in holding that Ms. Walkingstick failed to carry her burden of establishing a prima facie case of Title VII gender and race discrimination?**

II. **Did the District Court correctly find that Ms. Walkingstick had not established her prima facie case of Title VII retaliation?**

III. **Did the District Court correctly assess Ms. Walkingstick's pretext evidence in support of her Title VII discrimination and retaliation claims?**

IV. **Did the District Court correctly grant summary judgment in favor of Dr. Reif on Ms. Walkingstick's FMLA retaliation claim?**

## STATEMENT OF THE CASE

Ms. Walkingstick worked for NSU as Director of Enterprise Systems Information Services ("ITS") from September 16, 2013, until her termination on August 16, 2018. During her time at NSU, her department was known as the "department of no" due to Ms.

Walkingstick's negative attitude and unwillingness to delegate properly and complete projects in a timely manner. Dr. Reif became Ms. Walkingstick's supervisor in 2015 when he was named Chief Information Officer ("CIO"). Ms. Walkingstick's conduct was noticed by her supervisor, Dr. Reif, as well as the NSU President and other officials that discussed their concerns with Ms. Walkingstick and Dr. Reif. Despite this, Ms. Walkingstick refused to take responsibility or make the appropriate adjustments as requested. In addition, Ms. Walkingstick attempted to falsify her leave reports by failing to take leave, and insisting on taking "comp time," even though her position as an exempt employee did not allow her to take comp time. Ms. Walkingstick was formally reprimanded by Dr. Reif for falsifying her time sheet, which she ultimately corrected.

After Ms. Walkingstick was reprimanded, she made a formal complaint to HR, claiming Dr. Reif discriminated against her based on her gender and race. NSU immediately assigned investigators to investigate Ms. Walkingstick's claims against Dr. Reif. The investigation led to no evidence of any actual discrimination. Instead, the investigation brought light to more information regarding Ms. Walkingstick's severe

work deficiencies. On August 16, 2018, Ms. Walkingstick was terminated from her job at NSU for creating a negative work environment, failing to timely complete projects, falsifying or intentionally misrepresenting her leave reports, and for insubordination.

Ms. Walkingstick brought this lawsuit alleging claims of discrimination, retaliation, and harassment under Title VII and the Rehabilitation Act against NSU, and FMLA retaliation against Dr. Reif. Plaintiff appeals the District Court's Order granting partial summary judgment to NSU on Plaintiff's Title VII claims of gender and race discrimination and retaliation and granting summary judgment to Defendant Reif on Plaintiff's FMLA retaliation claim.

## SUMMARY OF THE ARGUMENT

The District Court applied the appropriate summary judgment standard, correctly holding that Ms. Walkingstick failed to carry her burden of establishing a prima facie case of Title VII gender and race discrimination, as well as **not establishing** her prima facie case of Title VII retaliation.

The District Court correctly assessed Ms. Walkingstick's pretext evidence in support of her Title VII discrimination and retaliation claims;

finally, the District Court correctly granted summary judgment in favor of Dr. Reif on Ms. Walkingstick's FMLA retaliation claim.

The District Court properly granted summary judgment to NSU on Plaintiff's Title VII claims of discrimination and retaliation.

Assessing Plaintiff's FMLA retaliation claim against Dr. Reif, the District Court correctly required Plaintiff to affirmatively establish Reif was her employer, and properly granted Reif qualified immunity. The district court's analysis and granting of summary judgment to NSU and Dr. Reif was correct and should be affirmed.

## STANDARD OF REVIEW

The Tenth Circuit reviews an appeal from an order granting summary judgment de novo, applying the same standard as the district court. *First Unitarian Church of Salt Lake City v. Salt Lake City Corp.*, 308 F.3d 1114, 1120 (10th Cir. 2002). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(c)). The appellate court reviews the factual records and all reasonable

inferences in the light most favorable to the party opposing summary judgment. *See First Unitarian Church*, 308 F.3d at 1120; *see also Fields v. City of Tulsa*, 753 F.3d 1000, 1008 (10th Cir. 2014).

Even if the appellate court does not agree with the district court's reasoning for its decision, the appellate court can affirm the district court's ruling on alternative grounds. *See Hornaday Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1005 n.8 (10th Cir. 2014) ("We are not required to restrict ourselves to the district court's stated reasoning, and we may affirm for any reason supported by the record.").

## ARGUMENT AND AUTHORITY

**PROPOSITION I:    THE DISTRICT COURT APPLIED THE PROPER PRIMA FACIE TEST TO MS. WALKINGSTICK'S CLAIMS.**

The District Court properly found that Ms. Walkingstick did not carry her initial burden to create an inference that her termination was based on gender or sex discrimination. In fact, she "expressly disavows any requirement that this prima face standard must in any way be related to gender discrimination." App. Vol. 5 at 992. The District Court used the preferred three-prong test, requiring Ms. Walkingstick "to show, by a preponderance of the evidence, [i] that she is a member of a protected

class, [ii] she suffered an adverse employment action, and [iii] the challenged action occurred under circumstances giving rise to an inference of discrimination." *Id.* at 991. Only the third prong was at issue, requiring some showing by Ms. Walkingstick of circumstances giving rise to an inference of discrimination. If a plaintiff fails to establish a prima facie case, the court need not reach the second and third steps and may grant summary judgment in favor of the defendant. *See Adamson v. Multi Cmty Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008) ("in the absence of facts tending to establish this initial inference, plaintiff is not entitled to the presumption of discrimination and a defendant is not required to defend against the charge.").

Ms. Walkingstick relied on the original four-prong prima facie test to show discrimination to the District Court. *See Appellant's Brief*, p. 12. Under that original 1973 test, there was no requirement to show an inference of discrimination. Instead, that test was to eliminate common legitimate reasons an applicant might be rejected. *Perry v. Woodward*, 199 F.3d 1126, 1139 (10th Cir. 1999). However, the law has evolved, and the *McDonnell-Douglas*[1] test is merely a tool provided by the Supreme

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Court "for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination." *Comcast Corp. v. Nat'l Ass'n of Afr. Am. Owned Media*, 140 S. Ct. 1009, 1019 (2020). "The importance of *McDonnell-Douglas* lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 358, 97 S. Ct. 1843 (1977).

"The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000). While the elements of a prima facie case "are neither rigid nor mechanistic, their purpose is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008). In *Adamson*, the Tenth Circuit found that the plaintiffs' statuses as women terminated from their

positions at work were not sufficient to establish a prima facie case and the plaintiffs failed to offer any other evidence to give rise to an inference of unlawful discrimination. *Id.* at 1151. In 2019, the Tenth Circuit clarified that to establish a prima facie case, the claimant "must include enough context and detail to link the allegedly adverse employment action to a discriminatory or retaliatory motive with something besides sheer speculation. *Bekkem v. Wilkie*, 915 F.3d 1258, 1274-75 (10th Cir. 2019); *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012). This is a far departure from Ms. Walkingstick's proposed standard that any person belonging to a protected group would be able to maintain a cause of action against his or her employer after termination without some showing of an inference of discrimination.

In addition, case law in the Tenth Circuit favors some version of the three-part test used by the District Court. *See Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012); *Daniels v. United Parcel Service*, 701 F.3d 620, 638 (10th Cir. 2012); *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1219 (10th Cir. 2013); *Orr v. City of Albuquerque*, 417 F.3d 1144, 1152 (10th Cir. 2005); *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005); *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266

(10th Cir. 2015). The District Court properly construed and applied the test controlling and preferred in this circuit.

Tenth Circuit case law provides several tests to be used, but central to any test is that a plaintiff show, by a preponderance of the evidence, that her termination occurred under circumstances giving rise to an inference of discrimination as required by *Teamsters* and *Kendrick*. Ms. Walkingstick made absolutely no showing of any circumstances that give rise to an inference of discrimination based on Ms. Walkingstick's sex or race. The District Court properly found (1) Ms. Walkingstick did not present any facts that the events in question occurred in close proximity to one another or to her termination (quoting *Bennett*); and (2) Ms. Walkingstick provided no evidence that she was treated differently than similarly situated employees (citing *Mitchell*). App. Vol. 5 at 993. As such, the District Court applied the proper three-part prima facie test. Regardless of whether the three-part or four-part test was used, Ms. Walkingstick failed in her burden to put forth evidence to support an inference of discrimination related to her termination. The District Court even "attempted to analyze every possible avenue to determine if [Ms.

Walkingstick] could meet this non-onerous standard and still found she did not." App. Vol. 5 at 1063.

## PROPOSITION II: THE DISTRICT COURT DID NOT VIOLATE THE PARTY PRESENTATION RULE.

Ms. Walkingstick claims the district court erred "when it *sua sponte* raised its own prima facie test and determined that Ms. Walkingstick's claims failed to meet this test." *See Appellant's Brief*, p. 22. She first claims the district court violated the "party presentation rule." *Id*. Ms. Walkingstick relies on *U.S. v. Sineneng-Smith*[2] for the general rule that courts are to rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. In *Sineneg-Smith*, the Ninth Circuit identified new arguments on appeal, invited supplemental briefing, instructed oral argument and based its decision on those arguments. The Supreme Court found the Ninth Circuit "departed so drastically from the principle of party presentation as to constitute an abuse of discretion." *Sineneng-Smith*, 140 S. Ct. at 1578. That is not what happened here. The District Court did not frame any issues for either party. The District Court interpreted and applied the

---

[2] *U.S. v. Sineneng-Smith*, ---U.S.---, 140 S.Ct. 1575, 1579 (2020).

law. The party presentation principle "is supple, not ironclad" and "a court is not hidebound by the precise arguments of counsel." *Sineneng-Smith*, 140 S. Ct. at 1581. The decision made must "bear [] a fair resemblance to the case shaped by the parties." *Id*. at 1582. In addition, the Tenth Circuit has a preference for upholding lower-court decisions which takes precedence over traditional party-presentation principles. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011). Although Ms. Walkingstick claims it was the "Magistrate's insertion of its own three-prong theory" at issue here, it was not the Magistrate's own "theory". The district court merely applied Tenth Circuit law that provides the standard the Court should use to determine whether Ms. Walkingstick presented the Court with a prima facie case. Furthermore, there was no violation of *stary decisis* or *vertical stary decisis*, especially where as Ms. Walkingstick points out, the "prima facie case is a flexible standard that may be modified to accommodate different factual situations." *See Appellant's Brief*, p. 23.

In addition, NSU and Dr. Reif, although using the older formulation as well, correctly argued that there must be a connection between the prima facie case and the alleged discrimination. App. Vol. 5 at 992. As

such, any reliance on the three-part test was to determine whether Ms. Walkingstick met her burden, as advanced by NSU and Dr. Reif, not the Magistrate *sua sponte*.

## PROPOSITION III: MS. WALKINGSTICK'S EVIDENCE WAS NOT SUFFICIENT TO SATISFY THE THREE-PART TEST.

Ms. Walkingstick alleges the three-part test is not applicable, yet also alleges her "evidence actually satisfied the three-part test." *See Appellant's Brief*, p. 22. The District Court properly found (1) Ms. Walkingstick did not present any facts that the events in question occurred in close proximity to one another or to her termination (quoting *Bennett*); and (2) Ms. Walkingstick provided no evidence that she was treated differently than similarly situated employees (citing *Mitchell*). App. Vol. 5 at 993. As outlined fully above in Proposition I, a prima facie case requires some evidence of discrimination, whether direct or not.

To satisfy the third part of the test, that termination occurred under circumstances giving rise to an inference of sex or race discrimination, Ms. Walkingstick was required to show: (1) that similarly situated non-minority or male employees were treated more favorably, (2) that the decision maker engaged in discriminatory actions or made

discriminatory remarks, or (3) that a pattern of events leading up to the adverse action is probative of race or sex discrimination. *See Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005); *see also Hysten v. Burlington Northern & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002) (recognizing the most common way to show an inference of discriminatory intent is to show that a similarly situated employee was treated more favorably). Individuals are considered "similarly-situated" when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of "comparable seriousness." *McGowan v. City of Eufaula*, 472 F.3d 736, 745 (10th Cir. 2006). "[E]ven employees who are similarly situated must have been disciplined for conduct of 'comparable seriousness' in order for their disparate treatment to be relevant." *Id.* (quoting *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1230 (10th Cir. 2000). Ms. Walkingstick provided no evidence to support an inference of discrimination related to her termination whatsoever. App. Vol. 5 at 993. Ms. Walkingstick provided no evidence that she was treated differently than similarly situated employees. *Id.* Therefore, Ms.

Walkingstick failed to establish the third prong of the test, resulting in her failure to prove her prima facie case.

**PROPOSITION IV: THE DISTRICT COURT PROPERLY FOUND MS. WALKINGSTICK HAD NOT ESTABLISHED A PRIMA FACIE CASE OF RETALIATION.**

Ms. Walkingstick failed to establish a causal connection between the protected activity and her termination. In an attempt to create the requisite causal connection, Ms. Walkingstick argues her July interview with NSU investigators regarding her formal complaint to HR constituted a new "complaint." *See Appellant's Brief*, p. 26. Ms. Walkingstick specifically requested an investigation into the matter, and NSU complied. App. Vol. 1 at 132. Her interview was part of the investigation, not a new complaint. As the District Court correctly pointed out, that interview "was no more than a reiteration and explanation of her claims of hostility and discrimination that she made in her May 4 email." App. Vol. 5 at 1003. Notably, Ms. Walkingstick made no further formal complaints after the investigation until she filed her lawsuit, and admitted "that she merely 'repeated' her earlier claims during this July 2018 meeting." App. Vol. 5 at 1003. Ms. Walkingstick acknowledged she simply repeated her "race and gender complaint and

provided additional detail" at that time. App. Vol. 2 at 386. As such, the District Court correctly found the substance of that conversation "did not constitute a new complaint." *Id.* at Vol. 5, 1004.

Finding that Ms. Walkingstick's Title IX complaint consultation (in January 2018) and her complaint to HR (May 2018) qualified as protected activities (App. Vol. 5 at 1002), the District Court then properly held Ms. Walkingstick failed to establish the third prong with regard to retaliation because the period between her initial May 4th complaint and the ultimate termination decision of August 16th was too lengthy to provide an inference of discrimination. *Id.* at 1004.

In order 'to establish a prima facie case for retaliation, Ms. Walkingstick had to show (1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that "a causal connection existed between the protected activity and the materially adverse action." *See* App. Vol. 5 at 1002, citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). But, as here, a three-month gap standing alone is insufficient to establish causation. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). "Vague reference to discrimination and

harassment" without any specific indication that the alleged conduct was motivated by a category protected by Title VII does not constitute protected activity. *Anderson v. Acad. Sch. Dist. 20*, 122 F.App'x 912, 916 (10th Cir. 2004). Although no magic words are required, the employee must convey to the employer a concern that the employer has engaged in practice made unlawful by the statute. *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008).

Ms. Walkingstick erroneously contends that "timing alone is sufficient for that element." App. Vol. 2 at 392. The date of her complaint, May 4, 2018, is when the time starts ticking. Without more, as required by *Anderson*, Ms. Walkingstick cannot prove a causal connection. She cannot rely on subsequent recitations of her complaint to extend proximity. Temporal proximity alone cannot show a causal connection unless the events are very close in time. *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1156-57 (10th Cir. 2008). "[A] three-month period, standing alone, is insufficient to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). Therefore, the District Court properly found the absence of a causal connection, and that Walkingstick had not established a prima facie case for retaliation.

## PROPOSITION V: THE DISTRICT COURT PROPERLY ASSESSED MS. WALKINGSTICK'S PRETEXT EVIDENCE.

NSU presented legitimate reasons for Ms. Walkingstick's termination, including her poor job performance and her improper timekeeping. Ms. Walkingstick caused constant software implementation delays, preventing fundraising for NSU, and creating payroll, human resources, and tax information access interruptions. App. Vol. 1 at 84. Dr. Reif provided several areas Ms. Walkingstick needed to improve upon in her evaluations. App. Vol. 5 at 986-989. In addition, Ms. Walkingstick falsified multiple leave reports. App. Vol. 1 at 70. Because NSU presented legitimate reasons for Ms. Walkingstick's termination, the burden shifted back to Ms. Walkingstick. She was required to establish, by a preponderance of the evidence, that NSU's reasons (poor job performance and improper timekeeping) were not the reasons for the employment decision. App. Vol. 5 at 1064 (citations omitted).

In response, Ms. Walkingstick disputed the misreporting of time and claimed if any misreporting did occur, it did not motivate termination because **she** viewed it as a minor infraction. App. Vol. 2 at 395. Yet Ms. Walkingstick did not dispute "Dr. Reif sincerely believed she had violated

a policy (that she had recently enforced with another employee) and that he informed her the violation resulted in an official reprimand." App. Vol. 5 at 995; App. Vol. 1 at 113. It was undisputed NSU "clearly believed she had committed this infraction and acted in good faith upon that belief by noting the timekeeping issue in her termination letter." App. Vol. 5 at 995 (citation omitted).

Ms. Walkingstick argued she had no performance issues prior to the May 4th complaint. App. Vol. 2 at 395-396. In fact, Ms. Walkingstick stated she did not have one performance issue that predated her May 4 complaint. *Id*. However, the evidence shows differently. In 2015, Dr. Reif stated "Marci has done well in keeping the ship afloat during a short staffed season. Now that her team is back to full strength, I am hopeful for a more proactive approach to meeting the campus needs." App. Vol. 1 at 149. Dr. Reif further stated "[a]lthough I marked 'Meets Expectations," these items still need to be addressed. I do not feel they could have been accomplished last year due to the unusual staffing difficulties encountered during this last year." *Id*. at 151.

In her 2016 evaluation, Dr. Reif wrote "Marci is very open to new ideas and processes as they pertain to other groups. Marci needs to be

open to new ideas and processes within her own group as we head towards increased campus transparency." *Id*. at 155. Other statements made by Dr. Reif on her evaluation include: (1) "Marci has had a challenging year with her health and attendance has been impacted. As long as Marci keeps me informed, we can easily accommodate. Please ensure that I am informed and that we keep our time as an example to others"; (2) "While I have marked this section as 'Meets Expectations,' this is the area that needs to improve. The enterprise group gets a pass as they have been so short staffed but now they are fully staffed and we have added a half time project manager, I expect improvement in the area"; and (3) "Marked 'Meets Expectations,' but do see that Marci is the 'Momma Bear' protecting her cubs and sometime struggles to place the needs of the institution first. This is an area that I will continue to monitor." *Id*. at 156-157.

In Ms. Walkingstick's 2017 evaluation, Dr. Reif added the following comments: (1) Ms. Walkingstick "shows increased openness towards campus transparency"; (2) they would continue to target "Planning, Organization, and Time Management Skills" "as a team"; (3) "Marci has had another challenging year with her health and attendance has been

impacted. As long as Marci continues to keep me informed, we can easily accommodate. Please ensure that I am informed and that we keep our time as an example to others, 8:00 punctuality could be improved upon."; and (4) "Keep working on a positive attitude towards new projects. We can't be the department of NO. Ongoing." App. Vol. 3 at 422-427.

It was Ms. Walkingstick's burden to establish that there was a "genuine factual dispute with regard to the truth" of NSU's legitimate, nondiscriminatory reasons for her termination. *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1170 (10th Cir. 2007). The performance reviews reflect back to 2015, when Dr. Reif became Ms. Walkingstick's supervisor. The undisputed performance reviews show they were not favorable in their entirety as Ms. Walkingstick contended. As such, the District Court correctly found Ms. Walkingstick failed to establish that NSU's legitimate, nondiscriminatory reasons for firing her were a mere pretext for race or gender discrimination. App. Vol. 5 at 1006-1007.

In addition, even though the District Court properly found Ms. Walkingstick failed to meet her burden regarding her discrimination

claims, it still proceeded through the steps of the burden-shifting analysis "out of an abundance of caution." *Id.* at 1062.

**PROPOSITION VI**: **THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT IN FAVOR OF DR. REIF ON MS. WALKINGSTICK'S FMLA RETALIATION CLAIM.**

Ms. Walkingstick's FMLA retaliation claim is against Dr. Reif in his individual capacity. App. Vol. 5 at 1017. Ms. Walkingstick erroneously contends she has no burden to establish Dr. Reif was her employer. But the plaintiff bears the initial burden of establishing a prima facie case. *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1135 (10th Cir. 2003). Employees may sue employers for violations of the FMLA pursuant to 29 U.S.C. § 2617(a). The definition of employer is defined as:

> (i)     means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
>
> (ii)    includes –
>
> (I)     any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
>
> (II)    any successor in interest of an employer;
>
> (iii)   includes any "public agency", as defined in section 203(x) of this title; and

(iv) includes the Government Accountability Office and the Library of Congress.

26 U.S.C. § 2611(4)(A). Dr. Reif clearly does not meet the definition of employer for purposes of FMLA retaliation. Ms. Walkingstick did not identify any specific facts posing genuine issues of material fact as to Dr. Reif's employer status. The District Court correctly held that Ms. Walkingstick must affirmatively establish that Dr. Reif was her employer, but failed to do so. App. Vol. 5 at 1018-1019.

Ms. Walkingstick further claims the District Court should not have relied on the economic realities test, but instead should have determined liability through statutory construction, with no authority to support this contention. Where a question arises, as here, as to whether an individual is a plaintiff's employer, district courts will apply the "economic reality test" to make that determination. App. Vol. 5 at 1019 (citing *Saavedra v. Lowe's Home Centers, Inc.*, 748 F.Supp.2d 1273, 1292-93 (D. N.M. 2010). *See also Zisumbo v. Convergys Corp.,* 2020 WL 3546794 at *12 (D. Utah 2020), (noting the Tenth Circuit applies the "economic reality" test under the Fair Labor Standards Act ("FLSA"), which uses identical language defining "employer," and that the Tenth Circuit has looked to "FLSA caselaw to interpret analogous FMLA provisions in the past."). Under

this test, courts consider whether the alleged employer has the decisive power to hire and fire employees, supervise and control employee work schedules or conditions of employment, determine the rate and method of payment, and maintain employment records *Saavedra*, 748 F.Supp.2d at 1293; *Cordova v. New Mexico*, 283 F.Supp.3d 1028, 1039 (D.N.M. 2017).

"[T]o establish an individual's liability within the meaning of 'employer,' the individual must have supervisory authority over the complaining employee, or control in some way the plaintiff's ability to take a leave of absence and return to work," and "FMLA regulations provide that this definition of employer applies to 'individuals as such "corporate officers acting in the interest of an employer."'" *Salemi v. Colorado Pub. Employees' Ret. Ass'n*, 176 F. Supp.3d 1132, 1155 (D. Colo. 2016), aff'd, 747 F.App'x 675 (10th Cir. 2018) (citing 29 C.F.R. § 825.104(d)). "[A]n individual who is given managerial or supervisory authority but has no right comparable to that of a partner, owner, or director to govern the business has interests that are distinct from those who do enjoy that right and are congruent with the interests of lower-ranking employees." *Smith v. Castaways Family Diner*, 453 F.3d 971, 986 (7th Cir. 2006) (citing *Packard Motor Car Co. v. N.L.R.B*, 330 U.S. 485,

489–90 (1947)). Most highly placed employees who have no right to participate in governance of the business are (like other employees) subject to the control of the business principles. *Id.* Their decisions can be overruled, their pay docked, their hours altered, or their positions eliminated. *Id.* "In the fundamental sense that they lack the right to control the enterprise, they are like other employees." *Id.*

In FMLA cases, the primary decision maker is key to determining whether adverse action was the result of FMLA retaliation. The Tenth Circuit has held that "if the supervisor's ability to make employment-related decisions is contingent on the independent affirmation of a higher-level manager or review committee, we focus on the motive of [the] final decision maker." *Macon v. United Parcel Service, Inc.*, 743 F.3d 708, 715 (10th Cir. 2014). The District Court properly determined Dr. Reif did not make the executive decision to terminate Plaintiff and Dr. Reif was not a final decision maker. App. Vol. 5 at 1022. The District Court properly noted he did not control the minds or motives of the final decision makers at NSU. *Id.* It would not be fair or equitable to try to impose liability, if any, on Dr. Reif for the motives of another decision maker. Dr. Reif does not pass the "economic-reality test" and cannot be considered an "employer" under the FMLA. As such, the District Court

properly applied the "economic reality test" and determined there was no genuine issue of material fact as to whether Dr. Reif "employer" under the FMLA.

**PROPOSITION VII: THE DISTRICT COURT PROPERLY HELD DR. REIF IS ENTITLED TO QUALIFIED IMMUNITY.**

The District Court properly found there was no genuine issue of material fact as to whether Dr. Reif was Ms. Walkingstick's "employer" under the FMLA. App. Vol. 5 at 1022-23. The District Court further properly found Dr. Reif was entitled to qualified immunity. *Id*. at 1023. Ms. Walkingstick contends any dispute over whether Dr. Reif is an employer within the definition of the FMLA is not part of a qualified immunity defense. However, when qualified immunity is invoked as it was here, Ms. Walkingstick was required to show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). District Courts are free to decide either prong first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The plaintiff has the heavy burden to rebut both arguments. *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015) (citations omitted). Qualified

immunity is an entitlement not to stand trial or face the burdens of litigation; it is an immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985).

A right is clearly established if it has been determined by Supreme Court or Tenth Circuit precedent such that the official would have been on notice that the right exists, and his actions or omissions are a violation of that clearly established constitutional right. *Callahan v. Millard County*, 494 F.3d 891 (10th Cir. 1997). Relying on generalizations or the broad history of a constitutional amendment or statute is insufficient for determining that a right is clearly established. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011). The contours of the invoked right must be sufficiently clear such that objectively reasonable state officers would understand that what they are doing violates that right. *Roska ex rel., Roska v. Peterson*, 328 F.3d 1230, 1247 (10th Cir. 2003) (citing *Anderson v. Creighton*, 483 U.S. 635 (1987)).

> In considering the "reasonable state actor," we must keep in mind that qualified immunity precludes the imposition of liability for "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986) (emphasis added). Where "officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Id.* at 341.

*Id.* at 1251. "[T]he touchstone of [this] inquiry is whether the officers [were] on notice [that] their conduct [was] unlawful." *Id.* at 1248. (citations and quotation marks omitted). Qualified immunity allows public officials to make reasonable decisions to carry out their duties without fear of liability or retributive lawsuits. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815 (2009).

Here, Ms. Walkingstick did not meet her burden regarding qualified immunity. Ms. Walkingstick provided no clearly established law that has been determined by the Supreme Court or Tenth Circuit precedent that Dr. Reif would have been on notice that he would be held liable as an employer under the FMLA, and his actions or omissions were a violation of that clearly established constitutional right. As such, the District Court properly determined that Dr. Reif is entitled to qualified immunity. App. Vol. 5 at 1023.

## CONCLUSION

The district court correctly held that Plaintiff did not put forth sufficient evidence supporting an inference of discrimination related to her termination, nor any evidence that she was treated differently than similarly situated employees. Further, the district court correctly found

that Plaintiff failed to make the requisite prima facie showing that she suffered an adverse employment practice actionable under Title VII. Finally, with regard to Plaintiff's FMLA retaliation claim, the district court properly found that Dr. Reif did not meet the definition of "employer" and that Dr. Reif was entitled to qualified immunity.

For these reasons, the decision by the District Court should be affirmed.

Respectfully submitted,

/s/ Dixie Coffey
**DIXIE L. COFFEY, OBA#11876**
**LEXIE P. NORWOOD, OBA#31414**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: 405.521.3921
Facsimile: 405.521.4518
Email: dixie.coffey@oag.ok.gov
        lexie.norwood@oag.ok.gov
*Attorneys for Defendants/Appellees*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding parts of the document exempt by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B), this document contains 6,132 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 36(a)(6) because this document has been prepared in a proportionally spaced typeface using Century Schoolbook in 14 point font.

## CERTIFICATE OF DIGITAL SUBMISSION

Pursuant to 10th Cir. R. 25.3 and the Tenth Circuit Court of Appeals' CM/ECF User's Manual 8th Ed., Updated April 24, 2019, I hereby certify that:

a. all required privacy redactions have been made pursuant to Fed. R. App. P. 24(a)(5) and 10th Cir. R. 25.5;

b. the hard copies of Appellees' Response Brief are exact copies of the ECF filing;

c. the ECF submission was scanned for viruses with the most recent version of a CrowdStrike Falcon Censor, last updated May 25, 20204 and, according to the program is free of viruses; and

d. the Appellees' Response Brief complies with applicable type volume limits as stated in the above Certificate of Compliance.

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of June 2024, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further certify that a true and correct copy of the foregoing document was sent via the ECF System to counsel of record who are registered participants.

/s/     Dixie Coffey
Dixie Coffey